UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANDRE MULLINS,

        Petitioner,

                                    Case No. 2:11-cv-14679

v.

                                    HONORABLE STEPHEN J. MURPHY, III

KENNETH MCKEE,

        Respondent.

_____,

**OPINION AND ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY,
AND DENYING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

      Petitioner Deandre Mullins, a prisoner in the custody of the Michigan Department of Corrections seeks habeas relief under 28 U.S.C. § 2254. ECF 1, 8. He challenges his convictions for two counts of first-degree criminal sexual conduct and one count of first-degree home invasion. Mullins claims that the prosecutor committed misconduct, his trial counsel was ineffective, and that the trial court incorrectly denied his request for substitute counsel. Respondent argues that the claims are untimely, procedurally defaulted, and without merit. For the reasons stated below, the Court will deny habeas relief.

## BACKGROUND

      Mullins's convictions arose from the sexual assault of C.M. on July 1, 2007. C.M. testified that she lived in the City of Detroit with her two young children. At approximately 2:30 a.m., she awoke to find a man approaching her with a knife. C.M. began screaming. The man told her to shut up, which she did. The man also told her that if she did as she

was told, he would not hurt her. C.M. told the man that her young children were in the house. The man told C.M. that another person was in the room with the children and they would not be hurt if she did as she was told. He then raped her. After the man left her home, C.M. took her children and fled to a neighbor's house where she called police. C.M. was transported to a hospital where evidence was collected. Approximately six months after the assault, C.M. viewed a photographic lineup. She selected Mullins's photograph from the lineup, identifying him as the assailant. C.M. testified at trial that she was certain that Mullins was the person who assaulted her.

Mullins's mother Brenda testified that she saw news reports at some point in January 2008 about a series of break-ins in Detroit. She saw surveillance video of a break-in at one of the homes. Brenda immediately recognized her son. She was aware that police believed that the suspect in the break-ins also committed several rapes. She advised her son to turn himself into police, which he did. Mullins was then arrested. Brenda spoke to him by telephone several times when he was in jail. He admitted to her that he had intercourse with the women who accused him of rape, but claimed that the acts had been consensual.

Two other sexual assault victims, who lived within walking distance of Mullins's home, testified that they also identified a photograph of Mullins from a photographic lineup. C.M. lived within a few blocks of Mullins's place of business.

Melanie Trapani was qualified as an expert in forensic biology and forensic DNA analysis. She obtained a DNA profile from the sperm and seminal fluid contained in C.M.'s rape kit. She compared that to a DNA sample from Mullins. Trapani testified that the DNA profile obtained from the rape-kit samples was consistent with the DNA sample from Mullins. She further testified that the likelihood of a random match in the African-American

2

population between the two samples was one in eight quintillion.

A Wayne County jury convicted Mullins of two counts of first-degree criminal sexual conduct and one count of home invasion. On May 22, 2008, he was sentenced to 285 months to 60 years of imprisonment for each of the criminal-sexual-conduct convictions and 141 months to 20 years of imprisonment for the first-degree home invasion conviction.

Mullins filed an appeal of right in the Michigan Court of Appeals, claiming that the trial court erred in failing to inquire into his reasons for requesting substitute counsel, the trial court erred in failing to remove from the venire jurors who had seen media coverage of the case, a change of venue should have been granted, and defense counsel was ineffective. The Michigan Court of Appeals affirmed the convictions. *People v. Mullins*, No. 286323, 2010 WL 99033 (Mich. Ct. App. Jan. 12, 2010). Mullins filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Mullins*, 488 Mich. 910 (2010).

Mullins then filed a habeas-corpus petition. He raised four claims: (i) the trial court abused its discretion in denying his request for substitute counsel; (ii) adverse pretrial publicity and insufficient *voir dire* denied Mullins the right to a fair trial; (iii) prosecutorial misconduct; and (iv) ineffective assistance of counsel. Mullins also filed a motion to stay the habeas proceedings so he could return to state court to exhaust a claim that trial counsel was ineffective in opening the door for introduction of Mullins's prior conviction and other prejudicial character evidence. The Court granted the motion and required Mullins to file a motion in the trial court within 60 days and return to this Court within 60 days of exhausting state-court remedies. ECF 6.

Mullins filed a motion for relief from judgment in the trial court, arguing: (i) the prosecutor knowingly presented perjured testimony and withheld exculpatory evidence; (ii) counsel was ineffective in failing to seek an expert in identification; and (iii) counsel was ineffective in opening the door to prior bad acts testimony. The trial court denied the motion. *See* ECF 13-13.  Mullins filed an application for leave to appeal in the Michigan Court of Appeals raising the first two claims raised in the trial court.  The Michigan Court of Appeals denied leave to appeal. *People v. Mullins*, No. 312358 (Mich. Ct. App. May 30, 2013). The Michigan Supreme Court also denied leave to appeal.  *People v. Mullins*, 495 Mich. 913 (2013).

Mullins filed a motion to lift the stay and an amended petition in this Court. ECF 8. The Court granted the motion to lift the stay and reopened the case. ECF 10. The amended petition raises these claims:

I. Mullins was deprived of a fair trial where newly discovered evidence shows that the prosecution presented perjured testimony and withheld exculpatory evidence thereby committing fraud on the court.

II. Trial counsel deprived Mullins of the effective assistance of counsel where she failed to seek an expert in identification to explain the implausible and impossible claims made by the complaining witness.

III. Mullins is entitled to a new trial where the trial court abused its discretion when it denied Mullins's request for new counsel.

**LEGAL STANDARD**

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

>by the Supreme Court of the United States; or

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "[T]he 'unreasonable application' prong [of the statute] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous . . . The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus

5

from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102–03 (internal citation and quotations omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Greene v. Fisher*, 565 U.S. 34, 38 (2011). Section 2254(d) "does not require citation of [Supreme Court] cases — indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

Lastly, a federal habeas court must presume the correctness of state-court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Id.*

## DISCUSSION

A. <u>Compliance with Terms of Stay and Timeliness of Petition</u>

Respondent argues that the entire petition should be dismissed because Mullins failed to comply with the terms of the Court's Stay Order and, alternatively, that Mullins's first two claims for habeas relief were not timely filed under the AEDPA's one-year limitations period.

6

The Stay Order required Mullins to file a motion for relief from judgment in the trial court within 60 days of the order and to move to lift the stay within 60 days after the conclusion of state-court proceedings. Respondent argues that Mullins violated both ends of the stay order by filing his motion for relief from judgment in the trial court one day late and failing to promptly return to this Court to reopen the habeas proceeding. Respondent also argues that the first two claims raised in the amended petition do not relate back to the original petition because they do not arise from the same set of operative facts and are, therefore, untimely. A federal court can, in the interest of judicial economy, proceed to the merits of a habeas petition without first resolving a question of timeliness. *See Smith v. State of Ohio Dept. of Rehabilitation*, 463 F.3d 426, 429, n.2 (6th Cir. 2006). Assuming without deciding that the issues raised in the petition are timely and substantially complied with the Court's stay order, *see Ahart v. Bradshaw*, 122 F. App'x 188, 192 (6th Cir. 2005), Mullins's claims nevertheless fail on the merits.

B. <u>Prosecutorial-Misconduct Claim</u>

Mullins's first claim for habeas relief alleges that the prosecutor improperly withheld exculpatory information and presented perjured testimony at trial regarding identification. Respondent argues that this claim is procedurally defaulted and, alternatively, meritless. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). Here, the Court finds that the interests of judicial economy are best served by addressing the

7

merits of Mullins's claim.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial-misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id. (*quoting *Darden*, 477 U.S. at 181). The Court must ask whether the Michigan Court of Appeals decision denying Mullins's prosecutorial-misconduct claims '"was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 567 U.S. at 47 (quoting *Harrington*, 562 U.S. at 103). To establish prosecutorial misconduct in the context of presenting false testimony, a petitioner must show: "(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Brooks v. Tenn.*, 626 F.3d 878, 894–95 (6th Cir. 2010) (quotations omitted).

Mullins's prosecutorial-misconduct claim arises from the victim's alleged contact with the officer-in-charge of the case, Jose Ortiz. Mullins argues that Officer Ortiz and C.M. met before the photographic line-up was conducted, that C.M. never saw her assailant's face, and that C.M. and Officer Ortiz colluded to falsely identify Mullins as the perpetrator. Mullins bases this argument on notes written by the assistant prosecuting attorney detailing a conversation she had with C.M. on November 16, 2009, approximately 18 months after Mullins's sentencing. According to the prosecutor's notes, C.M. admitted that she did not see the perpetrator's face, yet identified him at a photographic lineup and at trial. ECF 13-

12, PgID 946–47. Further, the prosecutor's notes indicate that C.M. stated she selected the photograph of Mullins because she had been directed to do so by Officer Ortiz. *Id.*

After her conversation with C.M., the prosecutor asked that an investigation be conducted. *Id.* at 948. The investigator interviewed C.M. and Officer Ortiz. C.M. stated that she did not meet with Officer Ortiz prior to the photographic lineup. *Id.* at 949. C.M. also stated, however, that Officer Ortiz "told her to focus on [photograph] number six." *Id.* C.M. stated that she picked number six because "she remembered his complexion, eyes, and nose." *Id.* Officer Ortiz told the investigator that he carefully explained the photographic-lineup process to C.M. because she seemed extremely nervous. *Id.* at 950. For example, he told her that if she saw a photograph that she recognized, she should focus on that photograph as well as the number associated with that photograph. *Id.*

On collateral review, the trial court addressed Mullins's claim that the prosecutor failed to turn over exculpatory evidence and knowingly presented false testimony when she allowed C.M. to testify she had seen the perpetrator's face during the assault. The trial court found no violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), because C.M.'s statement to the prosecutor occurred after Mullins was convicted and sentenced, and there was no indication that the prosecution was aware of the potential for perjury until well after the trial. *See* ECF 13-13, PgID 957. The trial court also held that C.M.'s later clarification to the investigator—that she was not influenced by Officer Ortiz, did not meet with him prior to the photographic lineup, and that she would have selected Mullins's photograph without regard to any remarks from Officer Ortiz—sufficiently rebutted Mullins's accusations of fraudulent testimony. *Id.* The trial court also held that C.M.'s statement was bolstered by the DNA evidence which linked Mullins to the assault on C.M. *Id.*

9

On habeas review, this Court does not determine whether this Court would have reached the same conclusion. Instead, the Court considers whether the trial court's decision was so lacking in justification as to constitute a denial of due process. The trial court's holding that C.M.'s statement to the investigator alleviated the concern that her trial testimony was perjured was a reasonable conclusion. C.M.'s explanation coupled with Officer Ortiz's statement to the investigator, the strong DNA evidence, and the consistency of the other victims' stories support the trial court's conclusion that C.M.'s testimony was not fraudulent. In addition, the trial court correctly held that the prosecutor did not violate *Brady* by withholding exculpatory evidence because there is no indication that the content of C.M.'s post-trial statement to the prosecutor was known to the prosecutor before the trial. Habeas corpus relief is denied on this claim.

C. Ineffective-Assistance-of-Counsel Claim

In his second habeas claim, Mullins argues that his trial attorney provided ineffective assistance by failing to seek an expert in identification to rebut the victim's "implausible and impossible claims" that she could identify Mullins as her assailant.

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013). The standard for obtaining relief is "difficult to meet." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). In the context of an ineffective-assistance-of-counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotations omitted). "[T]he question is not whether counsel's actions

were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

An ineffective-assistance-of-counsel claim has two components: a petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

The trial court is the last state court to issue a reasoned decision that addressed Mullins's ineffective-assistance claim. The trial court found no merit in Mullins's argument because Mullins was linked to C.M. and other victims through DNA evidence. ECF 13-13, PgID 958. "No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011). Although Mullins's counsel did not call an expert witness on the problems of eyewitness identification, his trial counsel cross-examined the witnesses, where possible, about the problems with identifications. The state court's decision that this was all defense counsel could do under the circumstances—most importantly, given the DNA evidence linking Mullins to the crime—was a reasonable application of *Strickland*. Habeas relief is denied.

D. <u>Substitute Counsel Claim</u>

Finally, Petitioner argues that the trial court erred in denying his request for

11

substitute counsel. On the morning of the first day of trial, defense counsel informed the court that Mullins wished to have a new attorney assigned. The trial court denied the request as a "ploy" to create an appellate issue. ECF 13-7, PgID 334. Defense counsel indicated that Mullins's request stemmed from his desire to dictate the questions she asked during voir dire. *Id.* at 375–76. The trial court ensured that Mullins was not asserting his right to self-representation, that he was able to assist in his own defense, and that counsel was prepared to proceed to trial. Mullins argues that the trial court erred in failing to grant the request and failing to inquire about the basis of his request.

The Sixth Amendment guarantees an accused in all criminal prosecutions the right to the assistance of counsel in his defense, and gives an indigent criminal defendant the right to the assistance of court-appointed counsel. *See Gideon v. Wainwright*, 372 U.S. 335, 343 (1963). "[T]he purpose of providing assistance of counsel is simply to ensure that criminal defendants receive a fair trial." *Wheat v. United States*, 486 U.S. 153, 159 (1988) (quotations omitted). "[I]n evaluating Sixth Amendment claims, the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." *Id.* (quotations omitted). Further, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* Because the Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his counsel, *Morris v. Slappy,* 461 U.S. 1, 14 (1983), "when a defendant is denied the counsel he prefers, the constitutional concern is whether he received an effective advocate." *Ray v. Curtis*, 21 F. App'x 333, 335 (6th Cir. 2001). This is so because "those who do not have the means to hire their own lawyers have no cognizable complaint so long

as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989).

The Michigan Court of Appeals addressed this claim on direct review and held that, although the trial court failed to inquire into Mullins's reasons for requesting substitute counsel as required under state law, the conviction would not be reversed because the trial court assessed defense counsel's level of preparedness and her attention to her responsibilities and found them to be satisfactory. *Mullins*, 2010 WL 99033 at *1.

To the extent Mullins argues that the trial court's failure to conduct a sufficient inquiry into his request violated state law, this claim is not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Mullins also fails to establish a constitutional violation because he has not shown that counsel rendered ineffective assistance. Absent some showing of ineffective assistance, Mullins cannot show that the trial court erred in the denying his motions for substitute counsel. Relief is denied on this claim.

## CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner

demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the habeas claims warrant relief. The Court will also deny petitioner leave to appeal in forma pauperis, because the appeal would be frivolous. *See Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999). Therefore, the Court denies a certificate of appealability and denies permission to proceed in forma pauperis.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus [8] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Petitioner is **DENIED** leave to proceed in forma pauperis on appeal.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

                              s/Stephen J. Murphy, III
                              STEPHEN J. MURPHY, III
                              United States District Judge

Dated: June 26, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 26, 2017, by electronic and/or ordinary mail.

                              s/David P. Parker
                              Case Manager